```
 1  KAREN P. HEWITT
    United States Attorney
 2  GEORGE V. MANAHAN
    Assistant U.S. Attorney
 3  California State Bar No. 239130
    United States Attorney's Office
 4  880 Front Street, Room 6293
    San Diego, California 92101-8893
 5  Telephone: 619 557-7174 (Office); 557-5551 (Fax)
    Email: george.manahan@usdoj.gov
 6
    Attorneys for Plaintiff
 7  United States of America
```

| | |
|---|---|
| 8 | UNITED STATES DISTRICT COURT |
| 9 | SOUTHERN DISTRICT OF CALIFORNIA |

| | | |
|---|---|---|
| 10 | UNITED STATES OF AMERICA, ) | Criminal Case No. 08-cr-0943-WQH |
| 11 | Plaintiff, ) | |
| 12 | v. ) | GOVERNMENT'S OPPOSITION TO DEFENDANT'S SENTENCING MEMORANDUM |
| 13 | ) | |
| 14 | SAUL FIGUEROA-FIERROS, ) Defendant. ) | |

19  NOW COMES plaintiff United States of America, by and through its counsel, United States
20  Attorney Karen P. Hewitt and Assistant United States Attorney George V. Manahan, and hereby files
21  the following Response in Opposition to Defendant's Sentencing Memorandum. This memorandum
22  is based on the case docket, the Presentence Report ("PSR"), the attached exhibits, and the Sentencing
23  Memorandum filed by Saul Figueroa-Fierros ("Defendant").
24  The United States respectfully submits that Defendant's motion to have his citizenship
25  determined is not properly before the Court. Rather, Defendant's citizenship should be determined
26  by an Immigration Judge ("IJ") or other immigration officials, as the law specifies, after he serves his
27  sentence for drug smuggling. Furthermore, any determination as to whether Defendant qualifies for
28  certain benefits during his incarceration should be determined by the Bureau of Prisons. If, however,

the Court wishes to recommend to the Bureau of Prisons how to classify Defendant's citizenship, the evidence demonstrates that Defendant is a Mexican citizen.

Additionally, the United States submits that, as previously determined by then Magistrate Judge Roger T. Benitez on November 6, 2002, Defendant was an adult at the time he brought illegal aliens into the United States for financial gain on October 29, 2002, and therefore Defendant's criminal history category is category II. More importantly, Defendant should not be allowed to collaterally attack his prior conviction during this sentencing hearing.

Finally, Defendant's adjusted offense level under the United States Sentencing Guidelines should be determined to be 17, and therefore the Guidelines recommend a sentencing range of 27 to 33 months. The United States recommends the Court sentence Defendant to 27 months imprisonment, the lowest sentence recommended by the Guidelines.

## I

## FACTS

On September 3, 2000, Defendant was apprehended by Border Patrol agents approximately 25 miles east of the Calexico Port of Entry. (Ex. 1, Excerpts from A file for A # 078756029, at 1.) Defendant told agents that his name was Isael Ruelas-Garcia and that his date of birth was December 22, 1982. (Id.) Defendant was voluntarily returned to Mexico. (Ex. 2, I-213s, at 1.)

On September 10, 2000, Defendant was again apprehended by Border Patrol agents, this time approximately 20 miles east of the Calexico Port of Entry. (Ex. 1 at 2.) Defendant told agents that his name was Saul Curiel-Fierro and that his date of birth was December 22, 1984. (Id.) Defendant was again voluntarily returned to Mexico. (Ex. 2 at 2.)

On September 25, 2000, Defendant applied for admission at the Calexico Port of Entry claiming to be a United States citizen to the primary inspector. (Ex. 1 at 3.) Defendant was referred to secondary, where he stated that his name was Alejandro Torres-Alvarado and that his date of birth was January 13, 1981. (Id.) Defendant was subsequently informed of his administrative rights and placed under oath. (Id. at 4.) While under oath, Defendant admitted that his name was Alejandro Torres-Alvarado, that he had previously used the alias Israel Ruelas-Garcia, and that he was born in Nayarit, Mexico on January 13, 1981. (Id. at 5.) Defendant further admitted that he had previously

illegally entered the United States over by climbing over the border fence and lived in the United States for approximately 2 years. (Id.) Defendant explained that he had been previously arrested two times by Immigration & Naturalization Service, but that he was again attempting to cross into the United States illegally to look for work. (Id.) Defendant was determined to be inadmissible and expeditiously removed from the United States for a period of 5 years under section 235(b)(1) of the Immigration and Naturalization Act ("INA"). (Id. at 7-8; Ex. 2 at 3.)

On October 9, 2000, Defendant was apprehended by Border Patrol agents approximately 25 miles east of the Calexico Port of Entry. (Ex. 2 at 4.) Defendant told agents that his name was Israel Ruelas-Garcia and that his date of birth was January 3, 1981. (Id.) Defendant was again voluntarily returned to Mexico. (Id.)

On December 2, 2000, Defendant was apprehended by Border Patrol agents approximately 25 miles east of the Calexico Port of Entry. (Ex. 2 at 5.) Defendant told agents that his name was Alex Torres-Alvarado and that his date of birth was July 27, 1981. (Id.) Defendant was again voluntarily returned to Mexico. (Id.)

On December 11, 2000, Defendant was again apprehended by Border Patrol agents approximately 25 miles east of the Calexico Port of Entry. (Id. at 6.) Defendant told agents that his name was Alex Torres-Alvarado and that his date of birth was December 22, 1981. (Id.) Defendant was again voluntarily returned to Mexico. (Id.)

On January 31, 2002, Defendant again applied for admission at the Calexico Port of Entry claiming to be a United States citizen to the primary inspector. (Ex. 1 at 15.) Defendant had in his possession a California Identification Card issued by the Department of Motor Vehicles on September 14, 2001 in the name of Saul Figueroa Fierros to which Defendant was an imposter. (Id. at 14, Ex. 2 at 7.) Defendant was subsequently informed of his administrative rights and placed under oath. (Ex. 1 at 10.) While under oath, Defendant admitted that his name was Alejandro Torres-Alvarado, that he had previously used the alias Saul Figueroa Fierros, and that he was born in Nayarit, Mexico on December 22, 1981. (Id. at 11.) Defendant further admitted that he had no documents permitting him to legally enter, reside, or be lawfully employed in the United States, that he had been previously arrested by Immigration & Naturalization Service approximately one year prior for falsely stating he

3

was a United States citizen, and that he had been previously caught crossing in the mountains without documents. (Id.) Defendant was determined to be inadmissible and expeditiously removed from the United States for a period of 20 years for falsely claiming United States' citizenship pursuant to section 235(b)(1) of the INA. (Id. at 16-17; Ex. 2 at 7.)

On February 3, 2002, Defendant was again apprehended by Border Patrol agents approximately ½ mile west of the Calexico Port of Entry. (Id. at 8.) Defendant told agents that his name was Alex Torrez-Alvarado and that his date of birth was December 22, 1981. (Id.) Defendant was again voluntarily returned to Mexico. (Id.)

On October 29, 2002, a Border Patrol agent observed a group of five illegal aliens loading into a black Ford Thunderbird along I-8 approximately ½ mile west of the Andrade Port of Entry. (Ex. 1 at 22.) After the Thunderbird, driven by Defendant, failed to yield to another Border Patrol agent's lights and sirens, a Controlled Tire Deflation Device was successfully deployed and Defendant was arrested. (Id. at 19.) Defendant had in his possession a California birth certificate and 2 California Identification Cards in the name of Saul Figueroa Fierros. (Id. at 20, 23-24.) One of the identification cards was issued on February 26, 1996 and the other was issued on September 26, 2002. (Id. at 24.) Defendant subsequently gave a sworn statement. (Id. at 23.) Although Defendant initially maintained that he was a United States citizen, he subsequently recanted and stated that he was a citizen and national of Mexico born on December 22, 1980 and that the California Birth Certificate in his possession was his cousin's. (Id.) Defendant further admitted that he was able to fraudulently obtain the California Identification Card from the Department of Motor Vehicle by using his cousin's birth certificate. (Id.) An immigration detainer was placed on Defendant. (Id. at 25.)

Additionally, after Dependant's arrest on October 29, 2002, a Border Patrol agent called his aunt Cecilia at (323) 441-1087. (Id. at 20.) Defendant's aunt stated that Defendant's name was Saul Fierros-Encarnacion and that he was born in Nayarit, Mexico in 1980. (Id.)

On October 30, 2002, a complaint was filed, which was signed by then Magistrate Judge Roger Benitez, charging Defendant with illegal transportation of aliens in violation of 8 U.S.C. § 1324(a)(1)(A)(ii). (Id. at 26-29.) On November 6, 2002, Judge Benitez held a status hearing to determine Defendant's name and age. Defendant gave testimony under oath, as did Veronica Fierros

for Defendant and a Border Patrol agent (the agent who took Defendant's sworn statement at the time of his arrest) for the United States. (Exs. Def.'s Sentencing Mem. at 2-3.) The Court determined that Defendant was an adult at the time of his arrest. (Id. at 2.)

On March 3, 2002, as a result of Defendant's plea of guilty to transporting illegal aliens for financial gain in violation of 8 U.S.C. § 1324(a)(1)(A)(ii), Defendant was sentenced to 10 months imprisonment and 3 years of supervised release. (Ex. 1 at 30-33.)

On August 4, 2003, Defendant sent a letter to immigration officials on an 'Inmate Request to Staff' form indicating that he was a United States citizen and asking for his detainer to be removed. (Id. at 34.) Defendant provided a physical of a newborn from General Hospital in Los Angeles, California, and later provided a California Certificate of Live Birth to support his claim. (Id. at 36, 40-41.) Immigration officials interviewed Defendant two times, on August 20, 2003 and again on August 27, 2003. (Id. at 41.) During the first interview, Defendant wrote a sworn statement testifying that his name was Saul Figueroa Fierros and that he had used the alias Alejandro Torres Alvarado. (Id. at 37-38, 41.) Defendant stated that he was born in Los Angeles, California on December 22, 1984. (Id. at 38.) Defendant also stated that he had never been deported from the United States and that he did not enter the United States illegally. (Id.)

During the second interview, Defendant again stated that he was a United States citizen, but the immigration official believed his mannerisms indicated that he was being untruthful. (Id. at 41.) Defendant claimed that he told the Border Patrol agent he was a Mexican citizen during his sworn statement in association with his October 29, 2002 arrest because the agent told him it was the only way he would be able to leave. (Id.) Defendant also stated that all of his apprehensions at the border in which he claimed Mexican citizenship occurred after his admission on October 29, 2002. (Id.) The immigration official believed that Defendant's story was false because all of Defendant's apprehensions at the border occurred prior to his arrest on October 29, 2002. (Id.) The immigration official processed Defendant for reinstatement of deportation pursuant to section 241(a)(5) of the Immigration and Nationality Act ("INA"). (Id.)

On August 29, 2003, an immigration official determined that Defendant was subject to removal through reinstatement of his prior removal order pursuant to section 241(a)(5) of the INA.

5

(Id. at 45.) Defendant was given notice that he is prohibited from entering the United States at any time because of his conviction of an aggravated felony. (Id. at 44.) Defendant was removed from the United States through the San Ysidro Port of Entry on August 30, 2003. (Id. at 42-43.)

On or about March 13, 2008, Defendant drove a white 1997 Ford F-250 truck from Mexico into the United States through the Calexico, East Port of Entry. (Plea Agreement § II.B.1.) The truck contained approximately 96.37 kilograms of marijuana. (Id. at § II.B.2.) Defendant knew the truck contained marijuana. (Id. at § II.B.3.)

## II

## ARGUMENT

**A.     Defendant's Citizenship Should Be Determined by Immigration Officials and the Bureau of Prisons**

Any authorized Department of Homeland Security ("DHS") official may at any time issue a Form I-247, Immigration Detainer-Notice of Action, to any other Federal, State, or local law enforcement agency. See 8 C.F.R. § 287.7(a). Such a detainer serves to advise other law enforcement agencies that DHS seeks custody of an individual suspected of being an alien presently in the custody of that agency, for the purpose of arresting and removing the alien. See id. Except under limited circumstances, an individual who is sentenced to imprisonment must complete his term of imprisonment before a determination is made whether he is an alien subject to removal. See 8 U.S.C. § 1231(a)(4). An I-247 was issued against Defendant. (Ex. 3.)

The decision whether an individual is a deportable or inadmissible alien, which necessarily involves determining the citizenship of the individual, is appropriately determined by immigration officials. See, e.g. 8 U.S.C.A. § 1229a(a)(1) (empowering an immigration judge to conduct proceedings to decide whether an individual is an inadmissible or deportable alien); 8 U.S.C. § 1231(a)(5) (empowering the Attorney General to reinstate a prior removal order after determining that an individual is an alien that has reentered the United States illegally after having been previously removed–such a determination is not subject to review).

Furthermore, the control and management of federal penal and correctional institutions is vested with the Attorney General, who may promulgate rules for the government thereof. See 18

U.S.C. § 4001(b)(1). The power to manage and regulate federal penal and correctional institutions is delegated to the Bureau of Prisons ("BOP"), see 18 U.S.C. § 4042(a)(1), including the power to designate the place of a defendant's imprisonment and whether he should be transferred. See 18 U.S.C. § 3621(b).

Initial designation decisions and decisions to transfer prisoners from one facility to another are the responsibility of the BOP and are made in accordance with Program Statement 5100.08, Inmate Security Designation and Custody Classification. Amongst the factors the BOP considers to determine where a prisoner should be housed are public safety factors. See Federal Bureau of Prisons, P5100.08, Program Statement: Inmate Security Designation and Custody Classification, at Ch.2, p. 4 (2006). One public safety factor is whether an individual is a deportable alien. See id. Ch. 5, p. 9. Therefore, it is the Bureau of Prisons responsibility to determine whether Defendant is a deportable alien for purposes of where he should be imprisoned and to what benefits he is entitled. See United States v. Ebolum, 72 F.3d 35, 38 (6th Cir. 1995) (recognizing that the Bureau of Prisons has the power to determine that a deportable alien cannot be housed in a minimum security facility or a community corrections center); see also Federal Bureau of Prisons, Legal Resource Guide to the Federal Bureau of Prisons 12 (2008), available at http://www.bop.gov/news/PDFs/legal_guide.pdf ("[A] J&C may indicate the sentencing court's preference for housing the inmate within a specific institution, geographic area, or specialized program. . . . Conflict with BOP policy and sound correctional management may, however, prevent compliance.").

For all the reasons discussed, the Court should defer the determination of Defendant's citizenship to the appropriate bodies: immigration officials and the BOP. Accordingly, the Court should deny Defendant's request to determine his citizenship.

**B.    If the Court Wishes to Make a Recommendation, it Should Recommend That Defendant Is Mexican**

To the extent that the Court wishes to recommend to the BOP Defendant's citizenship for purposes of his eligibility for any programs that may depend on that determination, the Court should recommend that Defendant is Mexican. Immigration officials have already considered whether

7

Defendant is Saul Figueroa Fierros born December 22, 1984 at USC Medical Center in Los Angeles, California, as indicated on a birth certificate in Defendant's possession, and determined that he is not. Despite the fact that Defendant has possession of a birth certificate indicating he is Saul Figueroa Fierros born December 22, 1984 , he has admitted, under oath, that the birth certificate in fact belongs to his cousin. (Ex. 1 at 23.) Furthermore, he admitted under oath that he was able to fraudulently obtain identification cards from the California Department of Motor Vehicles by using the birth certificate to which he is an imposter. (Id.)

Moreover, it stretches reason to the point of breaking to believe that Defendant could have had as many encounters with immigration officials that Defendant has had, admitting each time his Mexican citizenry, while all the while Defendant knew he was a United States citizen. Far from the story Defendant tries to tell this Court, that he falsely told immigration officials he was a Mexican citizen one time in order to remain with his mother, the Court now has evidence that Defendant has had no less than nine encounters with immigration officials during which he admitted he was a Mexican citizen. Accordingly, if the Court feels compelled to offer a recommendation to the Bureau of Prisons regarding Defendant's citizenship, it should recommend that they consider him a Mexican citizen.

**C.     Defendant Was an Adult at the Time of His Previous Conviction and the Court Should Deny Any Attempt to Collaterally Attack That Conviction**

Defendant was arrested for transporting illegal aliens in violation of 8 U.S.C. § 1324 on October 29, 2002. Of the various dates of birth that Defendant has provided federal officials, the only one which would have made him under 18 years of age on October 29, 2002 is the December 22, 1984 date for which Defendant has a birth certificate. Defendant admitted under oath, however, that birth certificate belongs to his cousin. (Ex. 1 at 23.) Therefore, the only logical conclusion is the one reached by then Magistrate Judge Roger Benitez in November 2002, that Defendant was an adult at the time of his arrest.

Furthermore, the Court should not allow Defendant to collaterally attack the validity of his previous § 1324 conviction by arguing he was a juvenile at the time during this sentencing hearing. See United States v. Martinez-Martinez, 295 F.3d 1041, 1044 (9th Cir. 2002) (denying defendants

attempt to challenge a prior conviction because of his claim that he was a minor at the time he was arrested because such collateral attacks are prohibited during sentencing hearings of subsequent convictions); see also United States v. Moreno-Hernandez, 419 F.3d 906, 915 (9th Cir. 2005) (affirming Martinez-Martinez's holding that collateral attacks on prior convictions are not permissible at sentencing hearings for subsequent convictions); United States v. Klein, 228 Fed. Appx. 787, 788 n.1 (9th Cir. 2007) (same). The Constitution and statutes of the United States authorize various means by which defendants, including those no longer in custody, may collaterally attack a conviction, such as habeas corpus, coram nobis, audita querela, or a presidential pardon. See United States v. Crowell, 374 F.3d 790, 793, 796 (9th Cir. 2004). But the instant sentencing hearing is not an appropriate forum for Defendant to challenge his previous conviction. Accordingly, the Court should deny Defendant's request to ignore his previous § 1324 conviction when determining his Criminal History Category.

**D.     The Correct Sentencing Guideline Range for Defendant Is 27-33 Months**

All sentencing proceedings are to begin with the Court correctly calculating the applicable Sentencing Guideline range. See United States v. Carty, 520 F.3d 984, 991 (9th Cir. 2008). Failure to correctly calculate the Sentencing Guideline range is procedural error. See id. at 993. In the instant case, Defendant pled guilty to smuggling 96.37 kilograms of marijuana into the United States. Therefore, as expressed in the United States' Sentencing Summary Chart, the base offense level is 24. See U.S.S.G. § 2D1.1(c)(8). The parties have jointly agreed that Defendant should receive two points off for his minor role, three points off for acceptance of responsibility, and two points off for meeting the conditions of the fast-track program, resulting in an adjusted offense level of 17. As calculated by the United States Probation Office in the Presentence Report, Defendant's criminal history score is II since he was sentenced to 10 months imprisonment for his § 1324 conviction.[1] See U.S.S.G. § 4A1.1(b). Therefore, Defendant's sentencing range under the advisory Sentencing Guidelines is 27-33 months.

Regarding the remainder of the § 3553 factors, the United States submits that none of them

---

[1] Since Defendant has more than one criminal history point, he is ineligible for a safety valve departure pursuant to section 5C1.2 of the Sentencing Guidelines, even if the Court were inclined to depart Defendant's criminal history category downward. See U.S.S.G. § 5C1.2(a)(1).

weigh sufficiently heavily in this case to persuade the Court to depart either upward or downward from the range suggested by the Sentencing Guidelines. In other words, although the guidelines are advisory, in this case they are good advice. Accordingly, the United States recommends the Court sentence Defendant to the low end of the suggested guideline range, 27 months imprisonment.

### III.
### CONCLUSION

For the reasons discussed, the United States respectfully recommends that the Court decline to address the issue of Defendant's citizenship, or to recommend that Defendant be considered a Mexican citizen. Furthermore, the United States recommends the Court deny Defendant's request to collaterally attack his previous § 1324 conviction and to sentence Defendant to 27 months imprisonment for smuggling 96.37 kilograms of marijuana into the United States.

DATED: August 8, 2008                                   Respectfully submitted,

                                                        Karen P. Hewitt
                                                        United States Attorney

                                                        s/ *George V. Manahan*
                                                        GEORGE V. MANAHAN
                                                        Assistant U.S. Attorney

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | ) | Criminal Case No. 08-cr-0943-WQH |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | **CERTIFICATE OF SERVICE** |
| SAUL FIGUEROA-FIERROS, | ) | |
| Defendant. | ) | |

IT IS HEREBY CERTIFIED THAT:

I, George Manahan, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

I am not a party to the above-entitled action. I have caused service of GOVERNMENT'S OPPOSITION TO DEFENDANT'S SENTENCING MEMORANDUM on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

1.  Stephen D Lemish
    Stephen D Lemish, Lawyer
    152 West Park Avenue
    Suite 150
    El Cajon, CA 92020
    Email: steve.lemish@sbcglobal.net
    Attorney for Defendant

I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 8, 2008.

s/ *George V. Manahan*
GEORGE V. MANAHAN