1  Stephen D. Lemish, CSB #123793
   Attorney at Law
2  152 West Park Avenue
   Suite 150
3  El Cajon, California 92020

4  (619) 444-5525

5  Attorney for Defendant SAUL FIGUEROA-FIERROS

8  **UNITED STATES DISTRICT COURT**

9  **SOUTHERN DISTRICT OF CALIFORNIA**

10  (Hon. William Q. Hayes)

| | | |
|---|---|---|
| 12  UNITED STATES OF AMERICA, | ) | Criminal No. 08CR0943-WQH |
| 13                Plaintiff, | ) | SUPPLEMENTAL MEMORANDUM |
|   |   | RE: DEFENDANT'S OBJECTIONS TO |
| 14  v. | ) | THE PRE-SENTENCE REPORT |
| 15  SAUL FIGUEROA-FIERROS | ) | |
| 16                Defendant. | ) | Hearing Date:  Sept. 19, 2008 |
|   |   | Time:          9:30 a.m. |

18  Now comes the defendant, SAUL FIGUEROA-FIERROS (hereinafter,
19  "Mr. Figueroa"), through counsel, filing the following Supplemental Memorandum
20  regarding his objections to the Pre-Sentence Report (PSR).

21  **I**

22  **BACKGROUND**

23  Mr. Figueroa filed four objections to the PSR:

24  1.  He objected to the false finding that he is not a citizen of the
25      United States.

26  2.  He objected to the false date of birth;

27  3.  He objected to the false finding that a role adjustment is not
28      appropriate and;

      4.    He objected to the PSR's lack of analysis under 18 U.S.C. 3553.

The government addressed the citizenship and date of birth objections in a written response. The government's position can be summarized as contending the Court must not decide the matter as it is a matter for the Immigration and Naturalization Service to decide, and, that in the alternative, if the Court were to decide the matter, that it should decide that Mr. Figueroa is a citizen of Mexico.

Thereafter, the Court invited Mr. Figueroa to submit points and authorities limited to the question of whether the Court is obligated to rule on the defendant's citizenship objection. Mr. Figueroa submits, that under current law (18 U.S.C. 3553a), the Court must decide the citizenship matter to comply with its obligation under the statute.

## II

## THE GOVERNMENT'S ARGUMENT

The government's position is that the citizenship issue is not properly before this Court. Such position, however, is not supported by proper authority. As the Court knows, citizenship issues are regularly decided by both judges and juries in our federal court system.

In this case, the government opines that this citizenship issue should be decided by an Immigration Judge (IJ) or other immigration officials, *as the law specifies*, after the defendant serves his sentence in this case. Government's Opposition, 1. Such government proposition, however, puts the cart before the horse. As we are currently dealing with the sentence to be imposed, it is both necessary and proper for the judge to make a determination of citizenship as citizenship itself will necessarily affect sentencing. In addition, and as set forth below, the government supplies no authority for the phrase "as the law specifies."

The government indicates any authorized Department of Homeland Security (DHS) official may at any time issue an Immigration Detainer. While this may be true, it does nothing to resolve the issue. Here, as the Court could find Mr.

1  Figueroa is a citizen of this country, DHS could, after his release from custody issue
2  the same immigration detainer.  Again, the government puts the cart before the
3  horse.
4        The government submits a individual must complete his prison term
5  before a determination is made whether he is an alien subject to removal pursuant to
6  8 U.S.C. 1231(a)(4).  The government misreads the statute and misconstrues its
7  meaning.  First, section 1231 deals with the detention of removal of aliens *ordered*
8  *removed.*  The subsection referred to by the government 1231(a)(4) refers only to not
9  removing an alien (who is ordered removed) until he is released from custody.  The
10 subsection cited by the government statue does not mention or deal with a
11 "determination" of whether a person is or is not an alien.
12       Section 1231 is notable, however, as it allows the Attorney General, if it
13 finds that Mr. Figueroa has reentered the United States illegally after having been
14 removed, to remove him again without Mr. Figueroa being able to have the previous
15 removal order reviewed or reopened.  The section further states that the "alien is not
16 eligible and may not apply for any relief under this chapter."  8 U.S.C. 1231(a)(5).
17       Section 1231, while not supporting the government's assertion, does
18 provide this Court with additional incentive to protect the rights of Mr. Figueroa as a
19 citizen of the United States.
20       The government further argues that an immigration judge may
21 appropriately decide whether or not a person should be deported.  No one would
22 dispute this simple proposition.  However, the question before the Court here is
23 whether an immigration judge is the *only* official who can determine it.  The
24 government cites 8 U.S.C. 1229(a)(I) for such proposition, and it, again, is not helpful
25 to the government's argument.
26       As with the last government argument, the defense also has no
27 problems with the propositions that 1) the Attorney General is vested with the power
28 to manage penal facilities, and that the Bureau of Prisons is authorized to designate

1  the place of a defendant's imprisonment.  Government's Opposition, p. 6-7.

2  However, buttressing the defense argument, the government also
3  correctly points out the Program Statements of the Bureau of Prisons (BOP) allow
4  them to consider certain safety factors, including whether an individual is a
5  deportable alien, in making those decisions.  The government errs, however, in its
6  conclusion that it is the Bureau of Prisons who determines whether the defendant is
7  or is not a deportable alien.   See, Government's Opposition, p. 7.   Again, the
8  government misreads the authority.  The section cited by the government, Program
9  Statement P5100.08, Chapt. 5, p.9, does not give the BOP any authority to
10 determine such matters, nor could it.  The section merely allows the BOP to house
11 such inmates differently than others (in at least a low security level institution.

12 Such authority, while not consistent with the government's position,
13 squarely supports the defendant's claim that the citizenship issue needs to be
14 decided *before* he is imprisoned.  If this is not done, the BOP must treat him
15 differently, and worse, than his fellow citizens.

16 The final authority provided by the government to support its position
17 that this Court need not decide Mr. Figueroa's citizenship issue, is one court case
18 from the Sixth Circuit.  As before, the case actually supports Mr. Figueroa's position.
19 The government cites the case of United States v. Ebolum, 72 F.3d 35, 38 as
20 supporting the proposition that the BOP has the power to treat a deportable alien
21 differently, and worse, than a U.S. citizen (he may not be housed in minimum
22 security or a community corrections center).  The defendant concedes the
23 proposition.  However, the crux of the proposition supports the defendant's position
24 as in this case, the defendant should not be treated differently, or worse, than other
25 U.S. citizens similarly situated.

26 The Ebolum case actually stands for the proposition that a district court
27 can properly consider the disparate treatment between citizens and non-citizens by
28 the Bureau of Prisons and otherwise for purposes of sentencing departures, but not

in the case where the conviction is a 1325, 1326 or other status offense in which the defendant is necessarily a deportable alien. In other words, Ebolum would limit the district court to *not consider alienage* in 1325 and 1326 cases, but in cases where the defendant's citizenship is not determinative of guilt, the district court is free to consider the impact of BOP regulations on non-citizen defendants. Mr. Figueroa submits that surely if the Court can consider such disparity for a non-citizen, it can, and must consider such disparity for a U.S. citizen.

As shown above, the government has presented absolutely no authority for its position that the Court should not, or need not, determine the defendant's objection as to citizenship.

### III

### THE DEFENDANT'S ARGUMENTS

**A. The government's authorities all favor the Court determining the issue prior to incarceration.**

As seen above, each of the government's authorities actually support the position of the defendant in that the defendant will be severely prejudiced by the Court's failure to decide the issue which is squarely before this Court.

It cannot be argued that citizen and non-citizen defendants are treated differently in custody. As shown by the government's citations, the BOP is authorized to keep deportable aliens in higher security facilities, and not allow them to be place in minimum security or community confinement centers. The BOP can use the fact of their deportable status to further deny them benefits which are normally given to U.S. citizens, including early release to halfway houses, and house arrest, drug programs which allow for early release, other drug and education programs, etc.

These are disparities where the Ninth Circuit has instructed district courts that departures would be appropriate. Such court's recognition of a district court's authority in non-1326 cases to consider a downward departure on the ground of

deportable alien status, can be seen at United States v. Charry Cubillos, 91 F.3d 1342 (9th Cir. 1996) and United States v. Davoudi, 172 F.3d 1130 (9th Cir. 1999).

While it is true, as the government contends, that the BOP has the right and authority to treat deportable aliens differently, and worse, than U.S. citizens, it does not determine who is and who is not a U.S. citizen. In the first instance, the BOP must rely on the PSR and U.S. Probation's determination of whether or not the defendant is a citizen. This is the function of the PSR. As a result of that function and the grave consequences it holds for incarcerated defendants, procedural safeguards were put into place, *including judicial review*. The district court has the critical responsibility for such judicial review of the accuracy of the PSR.

As cited in the government's opposition, the Program Statements of the BOP allow it to treat deportable aliens much differently than similarly situated U.S. citizens. They rely on the findings in the PSR as it is reviewed by an independent judicial court (the district court). The review is so vital that rules are promulgated to allow the defendant to file formal written objections and the government and U.S. Probation are given the opportunity to respond. Without such review, as noted under the government's authorities, the Attorney General need not give Mr. Figueroa a deportation hearing, review or rehearing on his prior deportation or any relief whatsoever.

**B.      Any objection to the PSR which impacts the defendant's custody should be determined by the District Court.**

As the Court knows, the district court relies on the statements in the PSR to sentence the defendant. In turn, the BOP relies on the judgment of the court and the PSR to determine how long and under what conditions the defendant will be incarcerated. Any objections by the defendant to the findings in the PSR which impact either the amount of custody or the conditions of his custody should be determined by the district court.

The Court knows there are objections to the PSR which may be factual or legal. Invariably, defense counsel will file objections which ultimately do not affect the incarceration or conditions of incarceration for their clients. Such objections could include criminal history points which do not ultimately move the defendant from one category to another. They could also include factual determinations which may only affect an upcoming civil matter against the defendant. In these cases, the district court should use some discretion to promote judicial economy, etc.

However, where the objection to the PSR will impact the amount of custody or conditions of custody, the Court should determine such objections. Again, the Court is the only entity standing between the defendant and the Executive, whether in the form of the Attorney General, Homeland Security, Immigration and Naturalization or the Bureau of Prisons. Without independent judicial review, required by both statute and rules of court, these agencies can exercise an inordinate amount of power over the lives of defendants. Limitations are placed on the Executive agencies in the form of judicial review.

It cannot be disputed that Mr. Figueroa will suffer a longer incarceration if the Court allows the BOP to treat him as a deportable alien. Generally, the BOP has programs in place to allow citizen defendants the opportunity for placement in halfway houses and community confinement, or even home detention during the last part of their custodial sentence. This benefit is *automatically lost* by Mr. Figueroa should the Court fail to exercise its obligation of judicial review. In other words, should the court decide to not determine the objection, Mr. Figueroa will spend more time in prison, no matter what sentence is given by this Court.

In addition to an automatic longer term of custody, Mr. Figueroa will suffer more severe custodial conditions should the Court not determine his objections. This is not a matter of esoteric or obscure losses of degrees of liberty; these are plain day-and-night, more time in jail, and worse jail conditions, reality. Where such grave consequences are apparent, the Court should decide the

1  objections.

### C. There are additional authorities in favor of a judicial determination of citizenship.

The court should be mindful of 18 U.S.C. 3621(b)(3) which states:

> (b) Place of Imprisonment.— The Bureau of Prisons shall designate the place of the prisoner's imprisonment. . . . that the Bureau determines to be appropriate and suitable, considering—
>
> . . . (3) the history and characteristics of the prisoner;

This statute also allows the BOP to treat Mr. Figueroa differently, and worse, if the Court declines to exercise the required judicial review.

The Court should consider 18 U.S.C. 3622 which allows the BOP to release or furlough certain prisoners for humanitarian or other reasons, visit a relative who is dying, attend a funeral, etc. Such considerations would not be available to Mr. Figueroa. It should also consider 18 U.S.C. 3624 et seq. regarding the release and pre-release custody of inmates.

### D. There is an affirmative duty to determine the citizenship issue inherent in 18 U.S.C. 3553.

In order to fashion an appropriate sentence under the statute, the defendant submits the Court must, in the first instance, determine whether or not he is a U.S. citizen. As set forth in the Objections to the Pre-Sentence Report, such determination impacts both on his incarceration with the Bureau of Prisons as well as any future detention by immigration authorities.

*The primary directive in Section 3553(a) is for sentencing courts to impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph 2.* Section 3553(a)(2) states that such purposes are:

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

1         (C)    to protect the public from further crimes of the defendant; and

2         (D)    to provide the defendant with needed educational or vocational

3 training, medical care, or other correctional treatment in the most effective manner.

4         In determining the minimally sufficient sentence, section 3553(a) further

5 directs sentencing courts to consider the following factors:

6         1)    the nature and circumstances of the offense and the history and

7 characteristics of the defendant (3553(a)(1));

8         2)    the kinds of sentences available (3553(a)(3));

9         3)    the need to avoid unwarranted sentence disparities among

10 defendants with similar records who have been found guilty of similar conduct

11 (3553(a)(6)); and

12         4)    the need to provide restitution to any victims of the offense

13 (3553(a)(7)).

14         Under 18 U.S.C. 3661, <u>no limitation shall be placed</u> on the information

15 concerning the background, character, and conduct of [the defendant] which a court

16 of the United States may receive and consider for the purpose of imposing an

17 appropriate sentence.  This includes, in this case, the status of the defendant as a

18 citizen of the United States.  The statutory language of section 3661 certainly

19 overrides the (now-advisory) policy statements in Part H of the sentencing guidelines,

20 which lists several factors as not ordinarily relevant to sentencing.

21         In this case, the defendant submits that no limitations should be placed

22 on the information that he is, and at all times was, a United States citizen, with all of

23 the rights associated with that status.  He submits such information is relevant to

24 sentencing in this case for all the reason set forth above.  The place and date of his

25 birth are relevant for a multitude of reasons as expressed in his objections to PSR

26 and his sentencing memorandum.

27         In sum, in every case, a sentencing court must now consider all of the

28 section 3553(a) factors, not just the guidelines, in determining a sentence that is

1  sufficient but not greater than necessary to meet the goals of sentencing.

2  Applying section 3553 to this case must result in a determination of the
3  defendant's citizenship. Not only does the issue affect the time Mr. Figueroa must
4  spend in custody, it also affects the conditions of such custody, including, but not
5  limited to drug programs, education and training programs, humanitarian release or
6  furlough, halfway house or community confinement placement, etc.

7  In addition, should the Court disregard its statutory duty under section
8  3553 or its judicial review function regarding the PSR, Mr. Figueroa will spend an
9  additional six months to a year in Immigration custody fighting for his citizenship
10 rights.

11 Generally, we do not jail our citizens when they have all the paperwork,
12 documents and testamentary evidence to prove they are U.S. citizens. In this case
13 the Court would be, in effect, sentencing the defendant to an additional six months to
14 a year in custody because it was unwilling to hold a hearing to determine if the
15 defendant is a citizen of this nation. Such additional time in custody is on top, or in
16 addition to, the additional custody he would receive from the BOP because he does
17 not qualify for community confinement as a deportable alien.

18 Because it has been shown, unequivocally, that the issue of citizenship,
19 as raised in the objections to the PSR, will definitely affect both the quantity and
20 quality of the defendant's incarceration, it must be determined by the sentencing
21 court. On any disputed portion of the PSR or other controverted matter, the district
22 court must rule on the dispute or determine that a ruling is unnecessary either
23 because the matter will not affect sentencing, or because the court will not consider the
24 matter in sentencing.

25 Here, it cannot be disputed the matter of citizenship will not affect
26 sentencing. Should the Court fail to make the determination on the objection of the
27 defendant, it will have the exact affect as determining that Mr. Figueroa is a citizen of
28 Mexico.

### E. Mr. Figueroa has made a prima facie showing of his citizenship; the matter must be determined.

Section 3553a requires the sentencing court to consider certain factors when determining what type and length of sentence is sufficient, but not greater than necessary, to satisfy the purposes of sentencing. Among these mandatory factors is the history and characteristics of the offender. It is not conceivable, in this case, that the Court can determine a proper sentence without taking into consideration whether Mr. Figueroa is an American citizen.

In addition, the primary directive in Section 3553(a) is for sentencing courts to impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph 2. Section 3553(a)(2) states that such purposes include a directive "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner."

Here, it is impossible to properly comply with all the purposes of sentencing without a determination of whether the defendant is a citizen. Without such knowledge, the Court cannot seek to provide the defendant with needed educational or vocational training, or other corrective treatment in the most effective manner.

In essence, section 3553(a) requires the district court, in this case, to determine the citizenship of the defendant as raised in the objections to the PSR. Again this is not a case where ample documentary and competent evidence of citizenship was not presented to U.S. Probation. U.S. Probation elected to follow the advice or statements of Homeland Security over the documentary evidence. Not only is the defendant's sentence and life affected by such action, but also it calls into question the processes and procedures of U.S. Probation and Homeland Security, and therefore a determination is also required to promote respect for the law.

A determination of the citizenship issue would also result in knowing the

true birth date of the defendant.  Such a determination is also relevant to determine if, at the time Mr. Figueroa committed his prior offense, he was a minor.  The defendant does not raise such issue to invalidate his prior conviction.  However, the sentencing court cannot be limited in the types of defendant information it reviews.  It is surely relevant to the issue of sentencing in the current case that the defendant was a minor in the preceding one.  It is relevant because the court may wish to consider what affect, if any, such a determination may make on criminal history.  Failure to determine the facts in the first instance would be to wholly disregard such information.  This the statute does not allow.

## IV

## CONCLUSIONS

1. Mr. Figueroa should be correctly identified as a citizen of this country.

2. The correct date of birth should be used.

3. A minimal to minor role should be recommended.

4 The Probation Department should make a proper analysis pursuant to the current law of the land: 18 U.S.C. section 3553(a).

Dated:   September 12, 2008

Respectfully submitted,

/s/ Stephen D. Lemish
Stephen D. Lemish, Attorney for
Defendant SAUL FIGUEROA-FIERROS
steve.lemish@sbcglobal.net

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

(Hon. William Q. Hayes)

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | Criminal No. 08CR0943-WQH |
| Plaintiff, ) | CERTIFICATE OF SERVICE |
| v. ) | |
| SAUL FIGUEROA-FIERROS ) | |
| Defendant. ) | Hearing Date: Sept. 19, 2008 |
| ) | Time: 9:30 a.m. |

I, Stephen D. Lemish, declare as follows:

    The attached SUPPLEMENTAL MEMORANDUM RE: DEFENDANT'S OBJECTIONS TO THE PRE-SENTENCE REPORT was caused to be filed by me on July 21, 2008 through Electronic filing (ECF) with the Office of the Clerk, United States District Court, Southern District of California.

    By virtue of the ECF system, I am informed and believe the Assistant United States Attorney assigned to this case and all interested parties were served electronically upon filing of this document.

    I declare under penalty of perjury under the laws of the Untied States the foregoing is true and correct.

Dated:   September 12, 2008

                                            Respectfully submitted,

                                            /s/ Stephen D. Lemish
                                            Stephen D. Lemish, Attorney for
                                            Defendant SAUL FIGUEROA-FIERROS
                                            steve.lemish@sbcglobal.net